UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WARD, an individual, | No. 2:17-cv-00519-JAM-DMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| COUNTY OF SISKIYOU and SISKIYOU COUNTY BOARD OF SUPERVISORS, | |
| Defendants. | |

Robert Ward ("Plaintiff" or "Ward") sued his former employer, the County of Siskiyou and the Siskiyou County Board of Supervisors ("Defendants" or "the County") following his termination. Compl., ECF No. 1. The County now moves for summary judgment. Mot., ECF No. 13. Ward filed an opposition, Opp'n, ECF No. 23, to which the County replied, Reply, ECF No. 25. For the reasons set forth below, the Court GRANTS Defendants' motion.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

Ward is the parent of six children, one of which, L.W., suffers from hypoplastic left heart syndrome. Ward Dep., ECF No.

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 22, 2019.

13-3, pp. 9-10.  L.W. received Social Security Disability during
the time of Ward's employment with the County.  Id. at 10.

The County offered Ward a position as an "extra-help"
Correctional Officer I with the Siskiyou County Probation
Department on July 18, 2013.  Offer Letter, ECF No. 13-3, p. 106.
The County defines Extra help positions as "employees who are
hired for seasonal work, nonrecurring work, vacation relief, or
any other work of a short duration which does not require the
duties of a permanent full or part-time employee."  Siskiyou
Cnty. Pers. Policy, ECF No. 13-3, p. 9.  Extra Help employees
"shall not be provided holiday leave, sick leave, vacation leave,
group insurance, or other types of benefits provided to permanent
employees."  Id.  Extra help employees were limited to work 866
hours or less per fiscal year, unless they received an extension
by the Personnel Officer.  Id. at 44.  Ward's offer was continent
on successful completion of all pre-employment requirements for
the position.  Ward accepted the offer the following day.  See
Offer Letter.  His official hire date was July 22, 2013.  Id.

Ward's position entailed supervision of juveniles at the
Charlie Byrd Youth Correctional Center.  See Ward Dep. at 29.
Extra help workers staff times when full-time correctional
officers are unavailable.  Stacey Jackson Dep., ECF No. 13-3, pp.
53-55.  During Ward's employment, many full-time correctional
officers were on leave or unavailable, providing extra-help
workers with a higher than average number of shifts.  Id.  Ward
accepted offered shifts, working more than twenty hours a week on
several occasions.  Id. at 51.

Ward also applied for open permanent positions with the

2

County.  Ward Dep. at 49.  Ward applied in 2014 for permanent positions, but he was not the highest ranked candidate for the Juvenile Correctional Officer I position.  Ward Dep. at 49-50; Jackson Dep. at 35-36.  When another two openings became available, Ward applied again; however, the second position was frozen when budgeted resources fell through.  Ward Dep. at 51-52. He continued in his extra-help position after the job was offered to the highest ranked candidate.  Ward Dep. at 49-50; Jackson Dep. at 35-36.

During his employment with the County, Ward was supervised primarily by Stacey Jackson ("Jackson"), Superintendent of the County of Siskiyou Juvenile Hall, and Joe Burkus ("Burkus"), Ward's senior supervisor.  Ward Dep. at 33.  Ward's supervisors reported to Jennifer Villani, Chief Deputy Probation Officer. Id. at 34.  Ward was disappointed about not being promoted and felt that supervisors exhibited favoritism.  Id. at 49-50.  Ward also observed his fellow probation officers being inattentive in the workplace and chatting, talking on their phones, watching videos, and engaging in personal business at work.  Ward Decl., ECF No. 23-1, pp. 3-4.  He reported this issue to his supervisors, attaching photos of his coworkers.  Id.  Ward states that the County took no action on his complaints.  Id. at 4.

Ward's final day of work was February 26, 2016.  Employment Separation Doc., ECF No. 13-3, p. 111.  The County terminated Ward on March 2, 2016 for "performance issues" and listed his status as an extra-help employee.  Id.  Deputy Chief Probation Officer Jennifer Villani made the decision to terminate Ward for insubordination and a concern that Ward was focusing on the

female juvenile probationers.  Villani Dep., ECF No. 13-3, pp. 70-73, 82.  Villani testified at her deposition that she was unaware of Ward's son's medical condition at the time of the termination.  Id. at 43.

Ward felt that the way the County terminated his employment was disrespectful.  Ward Dep. at 102.  Ward states that he was later told that he was laid off, rather than fired.  Id. at 88.

## II.  OPINION

Ward filed this lawsuit on March 10, 2017.  Compl., ECF No. 1.  In his Complaint, he brings twelve claims: (1) Discrimination and Harassment under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182 (b)(1)(E); (2) Discrimination and Retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612; (3) Discrimination and Harassment under the California Fair Employment and Housing Act, Cal. Civ. Code § 12940(a); (4) Whistleblowing Retaliation, Cal. Civ. Code § 12940(h); (5) Whistleblowing Retaliation, Cal. Labor Code § 1102.5(b); (6) Failure to Prevent Discrimination and Harassment under FEHA, Cal. Civ. Code § 12940(k); (7) Interference with and Denial of Medical Leave under FEHA, Cal. Civ. Code § 12945.2(t); (8) Intentional Infliction of Emotional Distress; (9) Wrongful Termination in Violation of Public Policy; (10) Breach of Contract; (11) Wage Claim, Cal. Labor Code § 200; and (12) Violation of Due Process Under the California Constitution, Art. I, § 7.  The County seeks summary judgment on Ward's claims, arguing that as an extra help employee, he was ineligible for the benefits he seeks in this lawsuit.  Mot. at 2.

///

## A.    Ward's Supplemental Declaration

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal quotation marks omitted).  To trigger the sham affidavit rule, the Court must find that there is a clear and unambiguous inconsistency between a party's deposition testimony and subsequent affidavit, rendering that affidavit a sham. Id.  This may occur when a declaration contains new facts or facts that the affiant previously testified he could not remember, unaccompanied by a reasonable explanation for the refreshed recollection.  Id. at 1080-81.

Ward submits a sworn declaration in support of his opposition to the Motion for Summary Judgment.  Ward Decl., ECF No. 23-1.  In his declaration, he adds facts that conflict with his deposition testimony.  For instance, during his deposition, he testified that he told Stacey Jackson and Joe Burkus about his son's heart condition.  Ward Dep., ECF No. 23-1, pp. 30-33.  In his declaration, he adds that he also told Jennifer Villani about his son's condition, but does not provide a reasonable explanation for this new fact.  Ward Decl. at 2.  This newly added fact conflicts with his deposition testimony that Jackson and Burkus reported to Villani, and he did not mention his son's condition to anyone above Jackson "[b]ecause [he] rarely saw anyone above Jackson."  Ward Dep. at 33-34.

Ward goes on to allege in his declaration that "[o]n numerous other occasions, I was also told by Jackson, Burkus, and Villani that my son's illness was interfering with their ability

5

to schedule me for work." Ward Decl. at 3. This allegation directly contradicts his deposition testimony, where he could not provide an example of a time that his superiors opposed his requests for a schedule modification and stated Jackson made a single comment about his son's disability. Ward Dep. at 54, 69. The Court concludes based on the evidence presented and absence of explanations for the newly added and contradictory testimony that Paragraph 7 through Paragraph 11 of Ward's Declaration trigger the sham affidavit rule and must be stricken.

B. Ward Was Not a Permanent Employee

Much of the County's motion hinges on whether Ward was properly classified as an extra help employee, or whether he became a permanent part-time employee at some time during the duration of his employment. Ward argues that since he worked more than 20 hours per pay period, his classification should have been switched from extra-help to permanent part-time. Ward is incorrect.

"[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." Miller v. State of California, 557 P.2d 970, 973 (Cal. 1977). Courts look to the "charter, civil service rules and regulations, and employee handbook for guidance" on a public employee's rights. Hill v. City of Long Beach, 40 Cal. Rptr. 2d 125, 130 (Ct. App. 1995) (finding that Miller applied to both civil service and non-civil service government employees).

6

The County of Siskiyou Personnel Policies, adopted by the Board of Supervisors, sets out the structure of County employee classifications. In Section 6.1, Levels of Employment and Eligibility for Benefits, it defines levels of County employment, including:

A. Probationary Employee: An employee in a probationary status during a specified initial period of employment, demotion to a classification in which permanent status had not been previously attained, or promotion.

B. Permanent Full-Time Employee: An employee who has successfully completed the probationary period, is assigned to a position which is expected to continue for an indefinite duration, and works a shift schedule which will total no less than 2080 hours per year.

C. Permanent Part-Time Employee: An employee who has successfully completed the probationary period, is assigned to a position which is expected to continue for an indefinite duration, and works a shift schedule of 20 hours or more, but less than 40 hours, per week. Such employees are subject to PERS regulations.

D. Extra-Help Employee: An employee whose work assignment is limited in duration. Anything over 860 hours requires written permission from the Personnel Officer and the employee may be subject to PERS regulations if total hours in a fiscal year total 1,000 or more.

. . .

3. Employees classified as permanent full-time and permanent part-time shall receive all employee benefits as provided by law and current MOUs. Probationary employees shall be entitled to the same benefits as permanent, full-time employees, subject to applicable eligibility provisions and time periods.

Siskiyou Cty. Pers. Policies, ECF No. 25-4, pp. 84–85.

This policy statement makes several items clear. First, there is a distinction between permanent and extra-help employees that expands beyond just the hours an employee works. To be classified as a permanent employee, an individual would need to have (1) completed a probationary period and (2) be assigned to a

7

position expected to continue for an indefinite duration. Second, the policy statement anticipates that extra-help employees may work more than 20 hours per week without changing classification. Extra-help employees working more than 860 hours per fiscal year—an average of 33 hours per biweekly pay period—must receive written permission and those working more than 1,000 hours per fiscal year—an average of 38.46 hours per biweekly pay period—may be subject to Public Employees' Retirement System regulations. Third, the policy statement limits the provision of employee benefits and the applicability of current Memoranda of Understanding to permanent employees.

There is no provision in the County Personnel Policy that bestows upon extra-help employees a means to bypass the competitive process and probationary period to be permanent employees. Ward's hiring and termination paperwork both classify his position as extra-help. ECF No. 13-3, pp. 106-07, 111. Although he worked an average of 1500 hours per fiscal year in 2013-14, 2014-15, and 2015-16, the duration of his employment and number of hours worked do not transform him into a permanent employee. Cf. Jenkins v. Cty. of Riverside, 41 Cal. Rptr. 3d 686, 703 (Ct. App. 2006) ("As a matter of California law, the mere lapse of time that an employee occupies a position designated as 'temporary' is not sufficient, of itself, to render the employee a de facto regular or permanent employee."). Even if the County had failed to secure written permission for Ward's hours worked in excess of 860 hours per fiscal year, such "negligent oversight" would not transform Ward into a permanent employee. Id. ("A negligent oversight cannot transform plaintiff

8

into a regular, permanent employee.").

Ward's reliance on the attachment to the Memorandum of Understanding ("MOU") is unavailing. ECF No. 13-3, p. 118. The first line of the Policies Regarding Permanent Part-Time Employees states, "[t]his policy applies to all permanent part-time County employees." Id. The MOU attachment goes on to state that "Permanent part-time is defined as an employee working twenty (20) or more hours a pay period but less than eighty (80) hours a pay period. Employees working less than twenty (20) hours a payroll period will not be considered permanent part-time employees and this policy does not apply to them." Id. Neither the MOU nor the attachment provide that extra-help employees are parties to the collective bargaining unit, or that extra-help employees convert to permanent employees upon working a certain number of hours. See Clark v. Orange Cty. Sheriff's Dep't, No. G028626, 2002 WL 2017092, at *4 (Cal. Ct. App. Sept. 4, 2002) ("The MOU simply does not provide that extra help employees who work for more than 12 months will become, ipso facto, employees subject to termination only for cause."). Ann Merkle, a Siskiyou County human resources employee, testified that working more than 40 hours per pay period would not make that employee a permanent employee. Merkle Decl., ECF No. 13-3, p. 39. She further reiterated the limiting language within the MOU attachment, stating that the MOU applies only to permanent employees. Id. "While not binding on the courts, the County's interpretation is entitled to deference, and will not be overturned unless clearly erroneous." Jenkins v. Cty. of Riverside, 41 Cal. Rptr. 3d 686, 697 (Ct. App. 2006).

Finally, Ward's own actions demonstrate his awareness that he was an extra-help, rather than permanent, employee. He was paid on the scale of an extra-help employee and did not receive benefits. Ward regarded himself as an extra-help employee, availing himself of the competitive process twice in efforts to become a permanent employee. See Jenkins v. Cty. of Riverside, 41 Cal. Rptr. 3d 686, 697 (Ct. App. 2006) ("Rather, she at all times regarded herself as not a regular employee; otherwise, she would not have taken the examinations or attended the interviews prerequisite to hiring in a regular OA II position.").

Accordingly, the County has demonstrated, as a matter of law, that Ward was an extra-help employee. The Court now considers his claims given that determination.

C.    Claim I: ADA Discrimination and Harassment, 42 U.S.C. § 12182(b)(1)(E)

Ward's first claim alleges he was denied employment based on his son's disability. Compl. at 8-9. Neither party's motion cited to a single case involving 42 U.S.C. § 12182(b)(1)(E) or what elements a party would need to plead to assert discrimination or harassment based on the section.

Title III of the ADA, 42 U.S.C. § 12182, prohibits discrimination in public accommodations:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Section 12182(b)(1)(E) prohibits a place of public accommodation from discriminating against someone who

associates with a person with a disability.  42 U.S.C.
§ 12182(b)(1)(E); Kotev v. First Colony Life Ins. Co., 927 F.
Supp. 1316, 1320 (C.D. Cal. 1996).  "To prevail on a
discrimination claim under Title III, a plaintiff must show that:
(1) he is disabled within the meaning of the ADA; (2) the
defendant is a private entity that owns, leases, or operates a
place of public accommodation; and (3) the plaintiff was denied
public accommodations by the defendant because of his
disability."  Arizona ex rel. Goddard v. Harkins Amusement
Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010).

Public entities, like the County, are covered by Title II of
the ADA.  42 U.S.C. § 12131(1).  Although an individual may bring
a claim under Title II against a public entity, actions under
Title III are limited to private entities.  Hernandez v. Cty. of
Monterey, 70 F. Supp. 3d 963, 973 (N.D. Cal. 2014).  Thus, Ward's
Title III claim against the County, a public entity, fails.  See
York v. Beard, No. 1:14-CV-01234-LJO, 2015 WL 3488217, at *2
(E.D. Cal. June 2, 2015), report and recommendation adopted, No.
1:14-CV-01234-LJO, 2015 WL 4557437 (E.D. Cal. July 27, 2015)
("The State of California and its agencies are public entities
rather than private entities, and state prisons are not places of
public accommodation.").  The Court grants summary judgment to
the County on Ward's first claim.

D.    Claim II: FMLA Discrimination and Retaliation, 29
      U.S.C. § 2612

Ward's second claim alleges he was discriminated and
retaliated against, then terminated, because he needed family
medical leave.  Compl. at 9–10.

The Family Medical Leave Act (FMLA) entitles eligible employees to a total of 12 workweeks of leave per 12-month period to care for the employee's child if that child has a serious medical condition. 29 U.S.C. § 2612(a)(1)(C). The FMLA further prohibits employers from interfering with an employee's FMLA rights or retaliating against an employee who exercises FMLA rights. 29 U.S.C. § 2615(a)(1-2).

For a prima facie case of FMLA interference, a plaintiff must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Escriba v. Foster Poultry Farms, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011)). "Employees must notify their employers in advance when they plan to take foreseeable leave for reasons covered by the Act, . . . and as soon as practicable when absences are not foreseeable." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1130 (9th Cir. 2001). "[T]he employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for FMLA protection." Id. at 1131.

Even assuming Ward satisfied the first three factors, his claim fails upon the fourth and fifth factors. An employee need not mention the FMLA, but the employee must actually seek leave. 29 C.F.R. § 825.302 ("When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the

FMLA."). Ward told Jackson and Burkus at the beginning of his employment that "there might be times where I might need to take a day off or something to go take care of my child" and "if there's a medical emergency, then, you know, I would have to try to get coverage so that I could leave or, you know, it might be, if he's really sick, I might not be able to come in." Ward Dep. at 31-32. These statements describe hypothetical medical situations that may or may not transpire at some unknown point in the future. The statements do not constitute a request for leave sufficient to put an employer on notice.

Additionally, there is no evidence that the County denied Ward any FMLA benefits. As an extra-help employee, Ward was free to accept or decline offered shifts. Ward testified that he was also able to turn down pre-scheduled shifts when he needed to stay home to care for his son. Ward Dep. at 59. Should Ward have needed to decline shifts to care for his son, there is no evidence that the County would have interfered with, restrained, or denied him that leave. Ward has not pointed to any FMLA benefits that the County denied him or any link between a leave request and his termination.

The Court grants summary judgment to the County on Ward's second claim.

E.   Claim III: FEHA Discrimination and Harassment, Cal. Civ. Code § 12940(a)

Ward's third claim alleges he was discriminated against, then terminated, because of his son's disability. Compl. at 10-11. Although Ward includes the word "harassment" in the title of his claim, he does not provide any allegations or evidence that

13

he suffered harassment.

FEHA provides that it is an unlawful "[f]or an employer, because of the ... physical disability ... of any person, to refuse to hire or employ the person or ... discharge the person from employment ... or to discriminate against the person in compensation or in terms, conditions or privileges of employment." Cal. Gov't Code § 12940(a). "A prima facie case of disability discrimination under FEHA requires a showing that (1) the plaintiff suffered from a disability, (2) the plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability." Castro-Ramirez v. Dependable Highway Express, Inc., 207 Cal. Rptr. 3d 120, 127 (Ct. App. 2016). "Adapting this framework to the associational discrimination context, the 'disability' from which the plaintiff suffers is his or her association with a disabled person." Id. at 128. This "disability" must have been "a substantial factor motivating the employer's adverse employment action." Id.

If Ward establishes a prima facie case of associational disability discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." Id. Ward must then show that the County's proffered reason was pretextual. Id.

Assuming that Ward was able to establish a prima facie case, the County offers a legitimate, nondiscriminatory reason for his termination: insubordination and a concern that he was showing favoritism and focusing on the female juveniles. Villani Dep.,

14

ECF No. 13-3, pp. 70-73.  Ward has not provided any evidence that this reason was pretext for associational disability discrimination.  Furthermore, Villani, who made the decision to terminate Ward, testified she was unaware of Ward's son's disability and did not recall anyone discussing the number of days Ward took off.  Id. at 42-43.

The County similarly provides a legitimate, nondiscriminatory reason for not promoting Ward to a permanent position: he was not the highest ranked candidate in either of the competitive processes in which he participated.  Jackson Dep., ECF No. 13-3, pp. 38-39.  Even taking Ward's testimony that Jackson made an inappropriate comment about his son's disability as true, there is no evidence that Jackson was on the panel that declined to promote Ward.  Ward Dep. at 50, 52.  Ward testified that Ralph Billingsley, Kim Leckness, "someone from the adult probation department," and Joe Burkus sat on the panels for his competitive processes and does not provide testimony that these individuals' decisions were influenced by associational disability discrimination.  See id.  There is simply no evidence that Ward's son's disability was a factor, let alone a substantial factor, in the County's decision not hire him for a permanent position or to terminate him.

The Court grants summary judgment to the County on Ward's third claim.

F.   Claim IV: Whistleblowing Retaliation, Cal. Civ. Code § 12940(h)

Ward's fourth claim alleges he was retaliated against, not promoted, and terminated due to his son's disability.  Compl. at

15

11.  He expands this claim in his opposition brief, arguing the alleged retaliation was also based on his complaints about his coworkers.  Opp'n at 12.

FEHA makes it unlawful "[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h).  "[I]n order to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Light v. Dep't of Parks & Recreation, 221 Cal. Rptr. 3d 668, 681–82 (Ct. App. 2017) (quoting Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1130 (Cal. 2005)).  A "protected activity" under this section includes "conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA."  Yanowitz, 116 P.3d at 1131.  An employer may rebut a plaintiff's prima facie case by providing a legitimate, non-discriminatory reason for the adverse employment action, which shifts the burden back to the plaintiff to prove intentional retaliation.  Light, 221 Cal. Rptr. 3d at 682.

In opposition to summary judgment, Ward presents no evidence that he opposed practices forbidden by FEHA.  He testified at his deposition that he contacted Jackson and then human resources

16

about his belief that he was entitled to the same benefits as a permanent part-time worker, Ward Dep. at 79-81, and that he complained to his superiors about the amount of time that his coworkers spent chatting and on their phones, Ward Decl. at 3-4. Neither of these complaints addresses a practice forbidden by FEHA. Ward has not presented argument or evidence that he had a reasonable and good faith belief that his benefits inquiry was based on a belief of impermissible discrimination, rather than his misunderstanding of how an extra-help employee secures permanent employment. Similarly, he does not argue his complaint about his coworkers' inattention in classrooms and the control room was based on a belief of impermissible discrimination. Ward has not established a prima facie case of retaliation under § 12940(h).

The Court grants summary judgment to the County on Ward's fourth claim.

G. Claim V: Whistleblowing Retaliation, Cal. Lab. Code § 1102.5(b)

Ward's fifth claim alleges the County violated state labor law by retaliating against him after he complained about his coworkers chatting and being on their phones while on duty. Compl. at 6, 12.

California Labor Code Section 1102.5(b) prohibits an employer from retaliating against an employee for disclosing information to a government, law enforcement agency, or another employee with investigatory authority that the reporting employee reasonably believes discloses a violation of, or noncompliance with, a state or federal statute, regulation, or rule. See

17

<u>Patten v. Grant Joint Union High Sch. Dist.</u>, 37 Cal. Rptr. 3d 113, 116-17 (Ct. App. 2005). "The elements of a section 1102.5(b) retaliation cause of action require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation." <u>Id.</u> at 117. To establish a prima facie case of retaliation, Ward must show (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there is a causal link between the two. <u>Id.</u>

Ward's claim fails because he has not established that he engaged in a protected activity. "Section 1102.5 requires that to come within its provisions, the activity disclosed by an employee must violate a federal or state law, rule or regulation." <u>Mueller v. Cty. of Los Angeles</u>, 98 Cal. Rptr. 3d 281, 291 (Ct. App. 2009). The section does not protect perceived violations of a department's own, local policies or personnel matters. <u>Id.</u> (finding that a cause of action for whistleblowing based on retaliation for filing grievances was not actionable); <u>Edgerly v. City of Oakland</u>, 150 Cal. Rptr. 3d 425, 435 (2012), <u>as modified</u> (Ct. App. Dec. 13, 2012) ("perceived violations of the City's charter and local rules and ordinances . . . are not within the purview of section 1102.5"). In his Complaint and pleadings on summary judgment, Ward argues that he submitted complaints regarding his coworkers' lack of attentiveness in classrooms and in the "control room." Compl. at 5-6; Opp'n at 12-13. He has not provided any federal or state law, rule, or

18

regulation that he reasonably believed their conduct violated. Accordingly, his complaints to his superiors about his coworkers do not qualify as activity protected by Section 1102.5(b).

The Court grants summary judgment to the County on Ward's fifth claim.

H.   Claim VI: FEHA Failure to Prevent Discrimination and Harassment, Cal. Civ. Code § 12940(k)

Ward's sixth claim alleges the County did not take all reasonable steps to prevent discrimination and harassment, and discriminated against him, harassed him, and terminated him for requesting "reasonable accommodation and interactive process, family medical leave and application for worker's compensation benefits." Compl. at 13.

FEHA makes it unlawful "[f]or an employer ... to fail to take all reasonable steps necessary to prevent discrimination and harassment ... from occurring." Cal. Gov't Code § 12940(k). To recover on a FEHA failure to prevent discrimination claim, a plaintiff must show that "(1) he was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm." Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015). An employer is not liable for failure to prevent discrimination where no discrimination took place. Trujillo v. N. Cty. Transit Dist., 73 Cal. Rptr. 2d 596, 602 (1998), as modified (Ct. App. May 12, 1998).

As stated above, Ward has failed to present evidence upon which a reasonable jury could find he was discriminated against, harassed, or retaliated against. The Court grants summary

19

judgment to the County on Ward's sixth claim.

I.  Claim VII: FEHA Interference with and Denial of Medical Leave, Cal. Civ. Code § 12945.2(t)

Ward's seventh claim alleges the County refused him California Family Leave.  Compl. at 14.  Although he originally alleged this claim as an interference claim under subsection (t), he expands his claim in his Opposition to also include a retaliation claim under subsection (l)(1).  Opp'n at 15.

Violations of the California Family Rights Act (CFRA) "generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave."  Moore v. Regents of Univ. of California, 206 Cal. Rptr. 3d 841, 855 (Ct. App. 2016).  A CFRA interference claim alleges an employer interfered with, restrained, or denied the exercise of, or attempted exercised of, a CFRA right.  Cal. Gov't Code § 12945.2(t).  "A CFRA interference claim "consists of the following elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights."  Id. at 869.  "The elements of a cause of action for retaliation in violation of CFRA are: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take [leave] for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her

20

exercise of her right to CFRA [leave]."  Id. at 867-68(internal quotation marks omitted).

As in Ward's FMLA claim, there is no evidence for his CFRA claim that he ever made a request for medical leave that the County denied.  As noted above, Ward only told his supervisors Jackson and Burkus at the beginning of his employment that he had a sick son and that he "might" need to take him to medical appointments at an undisclosed future time and date.  Ward Dep. at 31-32.  He also stated that "if" there was a medical emergency or "if" his son got sick, he "might not be able to come in."  Id. These temporally vague statements about possible future occurrences cannot be construed as requests for leave, about which the County would be required to provide additional CFRA information to supplement posted materials.

Ward testified that he was able to modify his schedule to take care of his ill son, Ward Dep. at 59, and has not rebutted the County's evidence that he was able to decline any offered shifts as an extra-help employee.  Ward has also failed to provide any evidence that he was the first ranked applicant during each of the competitive processes for permanent employment, and that the ten or fewer days he was unable to work before of his son's illness impacted his ranking.  Jackson Dep. at 36, 39; Ward Dep. at 59.  He has not countered the evidence that Villani was not aware of his son's illness or the number of days he took to care for his son when making the decision to terminate him.  Villani Dep. at 42-43.

There is not sufficient evidence upon which a reasonable jury could find that the County interfered with Ward's CFRA

1  rights or retaliated against him for exercising those rights.

2  The Court grants summary judgment to the County on Ward's seventh

3  claim.

4      J.   Claim VIII: Intentional Infliction of Emotional
            Distress

5

6      Ward's eighth claim alleges that he suffered severe or

7  extreme emotional distress as a result of the discrimination,

8  harassment, and retaliation of the County.  Compl. at 14–15.

9      "California recognizes a cause of action for intentional

10 infliction of emotional distress (IIED) when there is:

11 (1) extreme and outrageous conduct by the defendant with the

12 intention of causing, or reckless disregard of the probability of

13 causing, emotional distress; (2) the plaintiff's suffering severe

14 or extreme emotional distress; and (3) actual and proximate

15 causation of the emotional distress by the defendant's outrageous

16 conduct."  Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1245

17 (9th Cir. 2013) (internal quotation marks omitted).  "A

18 defendant's conduct is 'outrageous' when it is so 'extreme as to

19 exceed all bounds of that usually tolerated in a civilized

20 community.'"  Id. (quoting Hughes v. Pair, 209 P.3d 963, 976

21 (Cal. 2009)).

22     Ward has not presented any evidence (1) that the County

23 engaged in any intentional or reckless conduct that could cause

24 emotional distress or (2) that he actually suffered any emotional

25 distress, let along severe or extreme distress.  The Court grants

26 summary judgment to the County on Ward's eighth claim.

27 ///

28 ///

### K. Claim IX: Wrongful Termination in Violation of Public Policy

Ward's ninth claim alleges that his termination violated Article 1, Section 1, of the California Constitution based on his complaints about his coworkers' inattentiveness. Compl. at 15. Article 1, Section 1 of the California Constitution provides:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

Cal. Const. Art. I, § 1. To establish a claim of wrongful termination in violation of public policy, Ward must prove that he was terminated in violation of a policy that is "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." Barbee v. Household Auto. Fin. Corp., 6 Cal. Rptr. 3d 406, 412 (Ct. App. 2003) (quoting Stevenson v. Superior Court, 941 P.2d 1157, 1161 (Cal. 1997)).

As stated above, Ward has not established that his reporting of his coworkers' inattentiveness violated a state or federal policy. Here, he has similarly failed to establish that his termination was based on a policy (1) written into constitution or statute; (2) that benefited the public; (3) that was well-established at the time of his termination; and (4) that was both substantial and fundamental. See Stevenson, 941 P.2d at 1161. Viewing the facts in the light most favorable to Ward, a

reasonable jury could not find that his termination violated Article 1, Section 1 of the California Constitution.

The Court grants summary judgment to the County on Ward's ninth claim.

L.    Claim X: Breach of Contract

Ward's tenth claim alleges the County breached the Collective Bargaining Agreement between the County and the union by failing to promote him to a permanent part-time position. Compl. at 16-17.  He simultaneously alleges that he was a permanent part-time employee and should not have been laid off prior to extra-help and probationary employees according to the Agreement.  Id.

"[I]n the absence of any evidence of the duration or term of employment under a written or oral agreement, there is a statutory presumption that employment is terminable at will, and a contract of employment may be ended at any time at the option of either party."  Eisenberg v. Alameda Newspapers, Inc., 88 Cal. Rptr. 2d 802, 823 (Ct. App. 1999); see also Cal. Lab. Code § 2922 (stating where an employment has no specified term, it "may be terminated at the will of either party on notice to the other."). A plaintiff may not bring a breach of contract claim predicated on the termination of at-will employment.  Kasbarian v. Equinox Holdings, Inc., 739 F. App'x 397, 399 (9th Cir. 2018) (citing Guz v. Bechtel Nat. Inc., 8 P.3d 1089, 1103-04 (Cal. 2000)).

The County submitted copies of Ward's hiring and termination paperwork, reflecting his status as an extra-help employee, which is an at-will employment position.  Because a "contract requiring termination only for cause will not be implied if there is an

express writing providing to the contrary," <u>Eisenberg</u>, 88 Cal. Rptr. 2d at 824, the County has demonstrated that Ward's breach of contract claim lacks merit.  <u>See, e.g.</u>, <u>Kovatch v. California Cas. Mgmt. Co.</u>, 77 Cal. Rptr. 2d 217, 230 (Ct. App. 1998) (finding an employee was at-will by relying on Labor Code § 2922 presumption, employment application, and employee handbook).

The Court grants summary judgment to the County on Ward's tenth claim.

M.   <u>Claim XI: Wage Claim, Cal. Labor Code § 200</u>

Ward's eleventh claim alleges the County should have paid him for trainings related to his employment, as well as benefits and wages owed to permanent employees.  Compl. at 17-18.  He cites to the definition of "wage" under the California Labor Code, Cal. Labor Code § 200, and to the provision by which wage claimants may sue directly for wages and penalties, Cal. Labor Code § 218.  Neither party cites to a single case for this claim, let alone one that recites the elements Plaintiff must establish for his claim.

The Court has found that Ward was an extra-help employee and therefore was not entitled to the benefits earned only by permanent employees.  Thus, to the extent Ward's claim is premised on denied floating holidays, vacation days, and bargaining unit pay increases, his claim has no merit.

Ward's wage claim also alleges that he was not paid for 64 hours spent in PC832 training, for which the County paid his $150 course fee, and for "OC" training for which Ward paid the $75 course fee.  Ward Dep. at 81, 83.  In his deposition, Ward testified that he believed those trainings benefited the County,

and thus that he should have been paid wages for them. Id. He stated that two other workers, "Billingsley and Ralston," were paid for the time that they spent in PC832 training. Id. at 83. The two workers Ward identifies as being paid for trainings, Ralph Billingsley and John Ralston, were permanent juvenile correctional officers, Org. Chart, ECF No. 13-3, p. 109, entitled to additional benefits for which Ward was ineligible as an extra-help employee.

Jackson testified that the reason Ward paid $75 for his OC course was because he elected to take a training in his hometown, rather than wait for the course offered by the County at a later date. Jackson Dep. at 58. Jackson said that she allowed Ward to attend the training because "we cannot tell someone they can't go to a training," but did not approve or disapprove of his attendance. Id. at 60-61. She further testified that she told Ward that the County's policy was to pay PC832 course tuition for extra-help employees to attend on their own time. Id. at 62-63.

Ward has provided no evidence that the County required him to attend these specific trainings, and no case law or statutory support for his argument that he is automatically entitled to compensation for time spent in trainings he believes benefit his employer. Ward's deposition testimony does not conflict with Jackson's deposition testimony, where she stated that Ward elected to take an earlier OC course in his hometown rather than wait for the County's, and that Ward elected to take the PC832 course on his own time so long as the County paid the tuition. See Ward Dep. at 81, 83; Jackson Dep. at 58, 60-63. Viewing the facts in the light most favorable to Ward, a reasonable jury

could not find for him on his wage claim.

The Court grants summary judgment to the County on Ward's eleventh claim.

///

### N. Claim XII: Violation of Due Process Under the California Constitution, Art. I, § 7

Ward's twelfth claim alleges the County violated his due process rights under the California Constitution by ending his employment and not providing him with Skelly pre-disciplinary rights. Compl. at 18–19.

In Skelly, "the Supreme Court recognized that permanent civil service employees have a property interest in continued employment that is protected by due process." Mokler v. Cty. of Orange, 68 Cal. Rptr. 3d 568, 575 n.2 (Ct. App. 2007) (citing Skelly v. State Pers. Bd., 539 P.2d 774 (Cal. 1975)). At-will employees are not entitled to Skelly rights because they "have no constitutionally protected property interest in continued employment." Binkley v. City of Long Beach, 20 Cal. Rptr. 2d 903, 910 (Ct. App. 1993). Similarly, where public employment is at-will, an employee cannot bring a due process challenge premised upon his termination. Portman v. Cty. of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993).

As an extra-help employee, Ward's position constituted at-will employment that did not come with constitutional due process or Skelly rights. The Court grants summary judgment to the County on Ward's twelfth and final claim.

### III. ORDER

For the reasons set forth above, the Court GRANTS

27

Defendants' Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.

Dated: February 4, 2019

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE